### AMERICAN SOUTH AFRICAN LINE, Inc., v. UNITED STATES.

#### No. 38.

Circuit Court of Appeals, Second Circuit.

Dec. 19, 1932.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Roger B. Siddall and Vernon S. Jones, both of New York City, of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City (William E. Collins, Sp. Asst. to U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The defendant's motion, equivalent to a demurrer, raises the sufficiency of the petition to state a cause of action against the United States. A brief summary of its allegations will suffice. An American citizen named Emerson shipped as an assistant engineer on the plaintiff's steamship for a voyage from New York to Cape Town and return. At the port of Lourenco Marques, Portuguese East Africa, Emerson, while intoxicated and attempting to go ashore for his own purposes, fell from the gangway and broke his spine. He was immediately taken to a local hospital, and the next day was regularly discharged before the United States consul from the service of the steamship, which proceeded on her voyage. Emerson was without means to pay for his maintenance at the local hospital, where he remained nearly four months, or for his subsequent transportation home. The Secretary of State notified the plaintiff that it was responsible for Emerson's maintenance and return to the United States. Although denying all responsibility, the plaintiff, because of Emerson's necessitous condition, advanced the necessary and reasonable cost of his hospitalization and of his return passage to New York in the care of a physician and nurse. This was done after consultation with the United States consul at Lourenco Marques and the State Department at Washington, and plaintiff "received their approval of the various steps taken." A demand for reimbursement for these outlays had been refused by the defendant.

Section 4581, Revised Statutes, as amended (46 USCA § 683), provides, in part, as follows: " * * * If the seaman is discharged on account of injury or illness, incapacitating him for service, the expenses of his maintenance and return to the United States shall be paid from the fund for the maintenance and transportation of destitute American seamen. Provided, That * * * if any seaman incapacitated from service by injury or illness is on board a vessel so situated that a prompt discharge requiring the personal appearance of the master of the vessel before an American consul or consular agent is impracticable, such seaman may be sent to a consul or consular agent, who shall care for him and defray the cost of his maintenance and transportation, as provided in this paragraph."

The theory of the plaintiff's suit is that this statute imposes upon the United States the expense of supplying maintenance and repatriation to a seaman discharged in a foreign port because of an incapacitating injury, and the duty of reimbursing the shipowner who advances such expense. In support of this theory, two propositions are advanced: (1) That the shipowner is relieved by the statute of whatever duty he may theretofore have been under to care for and return the injured seaman; and (2) that his right to reimbursement from the United States is not conditioned upon compliance with the provisions of 46 USCA §§ 678, 679, and 680, which impose upon the American consul the duty of furnishing to destitute seamen subsistence and transportation home, and authorize him to contract for such transportation with masters of American vessels.

Much of the argument has been devoted to an effort to establish, by the appellant, and to refute, by the appellee, the correctness of the first proposition. Whether under maritime law the ship ever had the duty to maintain and bring home a seaman legally discharged in a foreign port, and whether, if there were previously such a duty, the United States did not assume it by the statute above quoted, are questions which we need not now decide. We shall assume arguendo, as did the District Court, that the first proposition is to be taken in the shipowner's favor, and we shall pass at once to the second.

█ The appellant argues that section 683 imposes no special duty with regard to an injured seaman upon the consul or any other specific person, but simply enacts that the expenses of his maintenance and return are to be borne by the United States. Neither the language of the proviso nor the legislative history of the section permit of such a construction. When it is impracticable for the master to appear before a consul on the discharge, the injured seaman is to be sent to a consul, who shall "defray the cost of his maintenance and transportation, as provided in this paragraph," which means out of the fund for destitute seamen. It would be an extravagant supposition to hold that the same duty is not imposed upon the consul when he passes upon the seaman's discharge in the presence of the master, as when the seaman must be sent to him. The statute must have a consistent purpose. The consul may refuse to discharge the seaman, and invoke the ship's duty of cure and maintenance; but, if he does discharge him, he is under a duty to care for him, no less than when the seaman is sent to him. This is put beyond question by the legislative history of the section. Section 4581, as it appears in the Revised Statutes, required the consul, when discharging a seaman, to collect three months' wages and to pay out of them the expenses incurred by the seaman, after his discharge, "for board or other necessaries at the place of his discharge." Only the balance was to be paid to the seaman, and no mention was made of a possible deficiency. In 1884 the section was amended (23 Stat. 55) to add to the seaman's expenses payable by the consul out of the wages and extra wages collected by him the expense "for transportation to the United States." The 1888 amendment (25 Stat. 80) allowed expenses "for reasonable charges for medical care and nursing" to be included in the consul's outlays, and provided that, in case the wages and extra wages were insufficient to defray the seaman's expenses, "the deficiency shall be paid from the fund in the Treasury for the maintenance and transportation of destitute American seamen." In 1898 (30 Stat. 759) the section was further amended to its present form, except for the proviso; this was added in 1915 (38 Stat. 1185). The 1898 act (section 25) also expressly repealed the 1888 amendment above mentioned. Since from the outset section 4581 has imposed on the consul the duty of paying the seaman's necessary expenses, and his transportation home after the 1884 amendment, it can hardly be supposed that the rewording of the section in 1898 was intended to relieve him of those duties, and particularly when the subsequently added proviso shows that they still continue in the special case there provided for.

█ Furthermore, sections 678, 679, and 680 of title 46 clearly apply; for, even if a dis-

charged seaman is not strictly destitute, section 679 provides for a seaman so disabled or ill as to be unable to perform duty and classes him as "destitute," if in fact he has no means to get home, as he ordinarily has not. The amount to be paid for transportation is to be agreed upon by the consul and the master of the transporting vessel, not exceeding 2 cents per mile, together with additional compensation for transporting sick or disabled seamen (section 680), which shall be such as the Comptroller General shall deem proper; the consul certifying in the certificate of transportation that the seaman is disabled to perform duty (section 679).

It is apparent from the sections to which reference has just been made (and see, also, section 681) that "additional compensation" for transporting a sick seaman, which constitutes most of the plaintiff's claim, must be allowed by the Comptroller General before any suit for it will lie against the United States. He has refused to recognize any claim. Whether the plaintiff might recover for transportation at the statutory rate of 2 cents per mile, we need not now decide, for the petition rests on no such theory. Accordingly, the judgment of dismissal must be affirmed, but without prejudice to another petition for the transportation alone, and without prejudice to proceedings against the Comptroller General to compel his allowance of "additional expenses," if the plaintiff so desires.

Judgment affirmed, without prejudice as above stated.